ELIZABETH JACOB v. PEERLESS WHITE LIME COMPANY, Appellant.—
40 S. W. (2d) 556.

Division One, May 21, 1931.

*Jones, Hocker, Sullivan & Angert* and *W. A. McCaleb* for appellant.

*Mark D. Eagleton* and *Hensley, Allen & Marsalek* for respondent.

GANTT, P. J.—This case came to me on reassignment. Action by Elizabeth Gisi to recover for the death of her husband, William Gisi, while in the service of defendant in its mine in Ste. Genevieve County. On suggestion of the marriage of plaintiff to one Jacob, the proceeding continued in the name of Elizabeth Jacob. The trial resulted in a verdict for $8,500, judgment accordingly, and defendant appealed.

It is alleged (1) that defendant negligently failed to use ordinary care to furnish Gisi a reasonably safe place to work, in that it required him to handle explosive caps at or near a place used by other employees carrying lighted lamps on the front of their caps, from which sparks emitted, thereby causing an explosion and the death of Gisi; (2) that defendant negligently permitted said employees with said lamps to move in dangerous proximity to a powder magazine at which it required Gisi to handle said caps, thereby causing an explosion and the death of Gisi; (3) that defendant negligently failed to promulgate rules for the safety of employees in that it failed to require said caps to be handled outside the mine, and failed to require employees carrying said lamps to refrain from dangerous proximity to others handling explosives, thereby avoiding an explosion and death of Gisi; (4) that defendant, acting through its employees, negligently moved with said lamp in dangerous proximity to Gisi, thereby causing an explosion and the death of Gisi. The answer was a general denial.

I. Defendant contends its demurrer should have been sustained for the reason the plaintiff, in her effort to make a case, shows conclusively that her husband was guilty of negligence which contributed to his death.

There is evidence tending to show the following: Defendant conducts a limestone mine in Ste. Genevieve County. A tunnel thirty-five feet wide and thirty-five feet high extends from the north six hundred feet southward into the mine. Natural light entering through the opening extends one hundred feet into the tunnel. The limestone is transported from the mine in motor-driven cars over two tracks, each twenty-three inches wide. The tracks are on the ground in the center of the tunnel. The drinking water for employees and

the carbide for lamps were on the east side of the tunnel and fifty feet from the entrance of the tunnel. A cupboard (magazine) resting on a bench ten feet long and three feet high was also on the east side of the tunnel and one hundred feet from the entrance of the tunnel. It is four feet from the bench to the east rail of the east track. The large box of caps and dynamite were stored outside of the mine. Caps and fuses convenient for use were kept in the cupboard. The defendant had many employees carrying, on the front of their caps, lamps from which projected a three-inch flame. If the flame came in contact with limestone dust or other solid particles, sparks were emitted. This occurred in defendant's mine whenever employees carrying lamps walked into a current of air.

On September 6, 1924, William Gisi, plaintiff's husband, was in the service of defendant as helper to one of its miners. In the course of his employment it was his duty to fasten caps over the end of fuses. On the day in question, and while he was so engaged at the bench and cupboard, Geisler, another employee, carrying a lighted lamp on the front of his cap, came from the south end of the tunnel for drinking water. The ground west of the tracks was muddy, causing Geisler to walk on the east side of the tunnel. As he "came up to" Gisi, his (Geisler's) lamp was emitting sparks. Gisi's lamp was not lighted. At that time a motor was approaching, and Gisi turned westward to cross the tracks with an open box in his hand containing one hundred dynamite caps. In turning to cross the tracks he brushed Geisler on the shoulder as he passed in front of him toward the west side of the tunnel. Almost immediately, and by the time Gisi cleared the tracks, there was an explosion resulting in his death and serious injury to Geisler. The boxes containing dynamite caps had inscribed on them the following: "Blasting Caps. Dangerous. Handle Carefully. Keep in a Dry Place. Keep Open Lights Away."

Defendant contends that Gisi was guilty of negligence as a matter of law in that he "turned from a place of safety at the powder magazine and walked immediately across the tracks in front of Geisler and in the path of the lamp, which at the time was emitting sparks, with an open box of dynamite caps in his hand, when he knew or should have known of the danger of an explosion."

The evidence does not sustain the contention. It tends to show that Gisi turned to cross the tracks to avoid the approaching motor. In turning he was confronted with Geisler and the sparks. Thus situated, he cannot be convicted of negligence as a matter of law in crossing the tracks. Indeed, it does not appear that he could have done otherwise in his effort to avoid the motor and the sparks. The demurrer was well ruled.

II. The defendant next contends there was no evidence to support the charge that defendant negligently permitted employees with lighted lamps to move in dangerous proximity to the powder magazine at which Gisi was required to work, and for that reason it contends the court erred in refusing its instruction withdrawing the charge from the consideration of the jury.

No one testified to having seen miners with lighted lamps pass in dangerous proximity to the magazine, and no one testified that defendant knew or could have known that miners habitually did so. Even so, there was evidence tending to show the maintenance of tracks through the tunnel, the operation of trains over the tracks, the use of the tunnel as a passageway by miners with lighted lamps, and the muddy condition of the ground on the west side of the tunnel. From this it may be inferred that defendant knew or should have known that employees with lighted lamps would, most likely, pass in dangerous proximity to the magazine. The contention is overruled.

III. Defendant next contends there was no evidence to support the charge that defendant negligently failed to promulgate rules for the safety of employees, and for that reason it contends the court erred in refusing its instruction withdrawing the charge from the consideration of the jury. It argues that plaintiff's work was dangerous, but not complex, and therefore it was under no duty to promulgate rules.

In Gaska v. Car & Foundry Co., 127 Mo. App. 169, l. c. 177, 105 S. W. 3, the question was under consideration. In the course of the opinion the rule is stated as follows: "The proposition is supported by all the decisions and treatises that, under certain circumstances, it becomes the duty of an employer to prescribe rules for the conduct of his business according to methods reasonably adapted to insure the safety of his employees. And the chief circumstance on which the duty to do this depends, is that the business is an intricate and complex one in which different workmen or groups of workmen have distinct tasks, and one group in the performance of its tasks is liable to endanger the safety of some other group engaged in different tasks."

In the instant case the evidence tends to show that in conducting the business, fuses must be capped, stone mined, tracks repaired, cars loaded, cars driven and cars unloaded. About forty employees were so engaged. Of necessity, they encountered each other in the performance of their duties. All of them used the tunnel as a passage-way. Under the circumstances, the question of defendant's duty to promulgate rules was for the jury.

IV. Defendant assigns error on the refusal of an instruction withdrawing the fourth charge of negligence. It abandoned the question in its points and authorities.

The judgment should be affirmed. It is so ordered. All concur.